IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RAMON LUIS APONTE-COLON
DAISY MARIA APONTE-COLON
FELIPA CONCEPCION COLON-APONTE
in their own right and on behalf of
JUAN BAUTISTA APONTE-DIAZ

Plaintiffs

vs                                                          CIVIL 10-1434CCC

MENNONITE GENERAL HOSPITAL, INC.
D/b/a Hospital Menonita de Aibonito
DR. JULIO DEJARDENS-FELIX,
Lic. 17285,
his wife, Juana de Dejardens
marital society formed between them;
(SIMED) SINDICATO DE
ASEGURADORES PARA LA
SUSCRIPCION CONJUNTA DE
SEGUROS DE RESPONSABILIDAD
PROVISIONAL MEDICO-HOSPITALARIA
INSURANCE COMPANIES A-D

Defendants

## OPINION AND ORDER

The action before us is filed against Mennonite General Hospital (Mennonite) pursuant to the Emergency Medical Treatment and Labor Act, (EMTALA), 42 U.S.C. §1395dd, with supplemental claims of medical malpractice against Mennonite and Dr. Julio Dejardens-Félix pursuant to Articles 1802 and 1803 of the Civil Code of Puerto Rico. Plaintiffs aver in their opposition to the dismissal motion that the emergency room of the Orocovis Centro de Diagnóstico y Tratamiento (Orocovis CDT) is a "dedicated emergency department" of Mennonite located outside its Aibonito premises. They contend that the hospital's dedicated emergency department, which provides emergency medical services in Orocovis, Puerto Rico, failed to perform an appropriate medical screening of their

CIVIL 10-1434CCC                                    2

deceased relative, Juan Bautista Aponte-Díaz, and discharged him without stabilization of an emergency medical condition, in violation of EMTALA.[1]

Before the Court is Mennonite's Motion to Dismiss (**docket entry 7**) based on its contention that the emergency room of the Orocovis CDT is not a part of the hospital, and, therefore, not subject to EMTALA.  Plaintiffs, the widow and children of the deceased, opposed the motion (docket entry 11), characterizing the facility as a dedicated emergency department of Mennonite, and, therefore, subject to the provisions of the EMTALA statute. Mennonite replied (docket entry 28) and, in response to a court order (docket entry 31), filed a supplemental memorandum addressing the issue of the "dedicated emergency department," as defined in 42 C.F.R. Part 489.24(b) (docket entry 32).  Mennonite having filed an unsigned and undated contract in support of its supplemental memo (docket entry 32), two orders were issued on April 15, 2011 and April 25, 2011 (docket entries 38 and 31) requiring it to submit a certified copy of the professional services contract between the Department of Health and Mennonite which was in effect at the time of the death of Juan Bautista Aponte-Díaz on May 25, 2009.  On April 26, 2011 Mennonite filed its Motion in Compliance (docket entry 42) submitting Exhibits 1, 2 and 3, or docket entries 42-1, 42-2, 42-3, the certified copies of contract 2007-DS-0616, and its Amendments A and B. Amendment B of contract 2007-DS-0616, identified by the Office of the Comptroller as 2007-DS-0616 B (docket entry 42-03) is the certified copy of the contract in effect on May 25, 2009. The English translations of these three exhibits were submitted on May 2, 2011. (Docket entries 43, 43-1, 43-2, 43-3.)

---

[1]EMTALA was enacted by Congress in 1986 in light of the increasing number of reports that hospital emergency rooms were refusing to accept or treat patients with emergency conditions if the patient did not have medical insurance 3 U.S.C.C.A.N. 1986 p. 420. The law requires the appropriate medical screening of persons who come to an emergency room covered by EMTALA and stabilization of emergency medical conditions before releasing such patients or transferring them to another hospital.

CIVIL 10-1434CCC                              3

Defendant relies primarily on the reasons given by the Court of Appeals' in Rodríguez v. American Intern. Ins., Puerto Rico, 402 F.3d 45, 47-48 (1st Cir. 2005), which found that the diagnostic and treatment centers (CDTs) in Puerto Rico do not meet the requirements of EMTALA, 42 U.S.C. §1395x(e).


**I. ANALYSIS**

**(A) Documents submitted in support of and against dismissal**

Included with its dismissal motion, Mennonite presents documents that it contends demonstrate that the Orocovis' emergency room where decedent was treated is an integral part of the Orocovis CDT and, therefore, not subject to EMTALA.  Exhibit 1 is the Certificate of Need and Convenience issued on February 26, 2007 by the Department of Health of Puerto Rico for the "Integrated Health Center in Orocovis."  The certificate reflects that the CDT is privately owned by Salud Integral de la Montana, Inc. (SIM); that its emergency room is leased to the Health Department which, in turn, has sub-leased its operation to Mennonite. By the explicit terms of this certificate, the emergency room services of the CDT are being provided by Mennonite, as sub-leaseholder.  The "Authorized Activity" is described on the certificate as follows:

> The corporate organization which is included in the category corresponding to Owner will continue operating the center for diagnosis and treatment with clinical laboratory, pharmaceutical and x-ray services. The emergency room services will be offered by the sub-leaseholder.

Exhibits 2 and 3 of the dismissal motion are two additional licenses relating to the Orocovis CDT's emergency room's pharmaceutical services, both of which identify it as the "Sala de Emergencia Centro de Salud Integral en Orocovis" or, the Emergency Room of the Integrated Health Center in Orocovis. (Our translation.) All three documents are issued by the Puerto Rico Department of Health, to SIM, the Health Department, and Mennonite,

CIVIL 10-1434CCC                               4

jointly.  Also to be considered in the certified copy of the Professional Services Contract with

the Puerto Rico Department of Health mentioned.

        Plaintiffs, in their opposition, focus on a 2003 amendment to the applicable EMTALA

regulation, 42 C.F.R. §489.24(b), which added a definition of "dedicated emergency

department":

> Dedicated emergency departments mean any department or
> facility of the hospital, regardless of whether it is located on or
> off the main hospital campus, that meets at least one of the
> following requirements:
>
> (1) It is licensed by the State in which it is located under
> applicable State law as an emergency room or emergency
> department;
>
> (2) it is held out to the public (by name, posted signs,
> advertising, or other means) as a place that provides care for
> emergency medical conditions on an urgent basis without
> requiring a previously scheduled appointment; or
>
> (3) During the calendar year immediately preceding the calendar
> year in which a determination under this section is being made,
> based on a representative sample of patient visits that occurred
> during that calendar year, it provides at least one-third of all of
> its outpatient visits for the treatment of emergency medical
> conditions on an urgent basis without requiring a previously
> scheduled appointment.  (Our emphasis.)

        Plaintiffs rely on the second criteria for its contention that the Orocovis CDT's

emergency room is a dedicated emergency department covered by EMTALA.  They submit

three exhibits[2] with their opposition to support its position.  Exhibit 1 is a February 10, 2010

certification letter that accompanied copies of Juan Bautista Aponte-Díaz' medical records.

The stationery used has the "Hospital Mennonita Aibonito" printed letterhead. Plaintiffs

disregard, however,  the text of that certification which states where the deceased's patient

file was kept:  the Health Center at Orocovis, Puerto Rico, not at Mennonite, Aibonito.  The

plain language of the letter is:  "I certify that the copies of the medical file of the above

_____

        [2]See, English Translations, docket entry 23.

CIVIL 10-1434CCC                    5

referenced patient are true and accurate to (sic) **the original medical file that is under the custody of the Health Information Management Department of the Emergency Room of the Health Center of Orocovis, Puerto Rico** "; (our emphasis). Exhibit 2 is the May 24, 2009 "Patient Registration Emergency Room" form of "General Mennonite Hospital, Aibonito, P.R." for the deceased which in the bottom part reads:

> "I hereby authorize the medical faculty and employees of the General Mennonite Hospital, Inc. of ( ) Aibonito ( ) Cayey to administer medical treatment and/or perform any such procedures that are deemed necessary, in accordance to the diagnosis and condition." The issue, however, is not whether faculty and employees of Mennonite provided treatment to the deceased but rather whether such treatment was provided by Mennonite faculty and employees as part of a contract of professional services between Mennonite and the Department of Health of Puerto Rico to operate, as subleasee of the Emergency Room of the CDT at Orocovis. Exhibit 3 is an excerpt that appears to be taken from Mennonite's website, which refers to the support of the Aibonito Mennonite Hospital with services available to complement the primary care of the Orocovis CDT.

**(B) History of Contract for Professional Services Between the Department of Health of Puerto Rico and Mennonite General Hospital, Inc., 2007-DS-0616 and Amendment B or 2007-DS-0616 B (docket entries 42-1, 42-3, translated at 43-1 and 43-3)**

The 2007 professional services contract which establishes the relationship between Mennonite and the Department of Health for the operation of the emergency room of the Orocovis CDT, entitled "Medical Group Professional Services Contract," refers to compliance by SIM, owner of such CDT, with a court decision in a local case. This case and the judgment issued shed light on Mennonite's role regarding the emergency room services provided at the Orocovis CDT. On the first page of the certified copy of this Professional Services Contract (docket entry 42-1, 43-1), it is stated that "**In compliance with civil case No. DPE 2006-0561 regarding Preliminary and Permanent Injunction against Salud Integral de la Montaña, Inc. [SIM] the DEPARTMENT** requested proposals for the Operation of the Emergency Rooms of the Diagnosis and Treatment Centers of Orocovis and Barranquitas." The Court takes judicial notice of the matters raised

CIVIL 10-1434CCC                            6

in civil case No.  DPE2006-0561, <u>Commonwealth of Puerto Rico (Department of Health) v.</u> <u>Salud Integral de La Montaña, Inc.</u> (SIM). As delineated in the factual allegations of Commonwealth's complaint, the Commonwealth of Puerto Rico considered the emergency rooms of the CDTs, including the Orocovis CDT, object of this lawsuit, integral parts of such health centers.  It is relevant to note that, pursuant to authorization previously established by law, on June 30, 1999, the Puerto Rico Department of Health had sold four CDTs, located in the municipalities of Barranquitas, Corozal, Naranjito and **Orocovis**, to SIM (¶44[3]).  Under the terms of those contracts for purchase and sale, SIM bound itself to manage said facilities in accordance with the regulations governing such institutions (¶47). With regard to working hours, SIM agreed "to maintain and keep the [CDT] Facilities open and operating as currently maintain[ed], including the operation of the emergency room 24 hours a day, 365 days a year."  <u>Id</u>., quoting article 6, ¶6.1 of the sale contracts.  Through various communications, SIM expressed its determination to partially close the emergency rooms of the CDT facilities at Orocovis and the three other municipalities, allegedly in breach of its contracts with the Commonwealth  and in violation of the applicable regulations (¶13). On June 22, 2006, SIM reiterated its decision to close the emergency rooms of these four CDTs during the 11:00 p.m. to 7:00 a.m. shift, beginning July 1, 2006 (¶14).  In response to SIM's intended action, the Department of Health of the Commonwealth filed suit No. D PE2006-0561 on June 29, 2006 for preliminary and permanent injunctive relief and breach of contract, to force SIM's compliance and keep the emergency rooms of the CDTs at Barranquitas, Corozal, Naranjito, and **Orocovis** open round-the-clock.

At this point we note that, with regard to the Health Department's regulations governing health facilities, invoked by th Puerto Rico Health Department in its complaint against SIM, the laws of Puerto Rico provide, in pertinent part:

---

[3]All paragraph citations in this section refer to the Puerto Rico Dept of Health's complaint in civil case No. D PE2006-0561, unless otherwise noted.

CIVIL 10-1434CCC                                    7

> The Secretary [of Health] shall **promulgate regulations with force of law** to establish all matters regarding the applications for certificates of necessity and convenience, and shall establish the standards to insure that the information required from the petitioners shall be that which is necessary and pertinent for the evaluation of the application. 24 L.P.R.A. §334j (Official translation) (our emphasis).

Pursuant to that mandate, the Secretary of Health of Puerto Rico promulgated Regulation 112 of March 9, 2004 (Department of State No. 6786) to govern the process of evaluation of applications for certificates of need and convenience.  Said regulation, at Article III, ¶7 defines "Center for Diagnosis and Treatment" as

> An independent facility or one operated in conjunction with a hospital that provides integrated health services for the diagnosis and treatment of outpatients, **with an emergency room**; that provides or makes available, through arrangements with other health facilities, conventional radiology, pharmacy and clinical laboratory services (¶24).   (Our emphasis, our translation.)

Article VII, Section H of the regulation, which sets forth the particular criteria for CDTs, provides, in pertinent part that (1) All CDTs must be located within 30 minutes from a hospital; (4) **All CDTs must offer services of emergency  rooms**; and (5) In those municipalities that do not have a hospital, the CDT emergency rooms must offer services 24 hours a day.  Also relevant to our inquiry is Chapter VI of the Department of Health's General Regulation for the Operation and Functioning of Health Facilities in Puerto Rico (Department of State No. 6044 of November 7, 1999) which contains the requirements applicable to hospitals and CDTs.  Article A, Section 2 of this chapter provides, with regard to emergency rooms:

> In addition to what is stated above, all health facilities and CDTs shall include the services of an Emergency Room, 24 hours a day, 365 days a year, that covers the  population's needs; said emergency room will be organized according to the level of services rendered as established by this regulation. The Emergency Room will comply with the provisions of Law No. 35 of June 28, 1994, as amended.  See, SIM complaint, ¶29.  (Our translation.)

CIVIL 10-1434CCC                         8

According to the Judgment issued in civil case No. D PE2006-0561 on June 22, 2007, a hearing had been held on February 28, 2007 at which the Puerto Rico Department of Health and SIM informed the court that they had extrajudicially resolved the controversy by signing a lease contract regarding the emergency rooms that were the object of the lawsuit. The Judgment expressly states that, commencing February 28, 2007, the Department of Health of the Commonwealth of Puerto Rico would administer the emergency rooms of the **Orocovis** and Barranquitas CDTs through a lease contract. This led to the Professional Services Contract between Puerto Rico's Department of Health and Mennonite (docket entries 42-1, 43-1). Pursuant to the judgment in D PE2006-0561, the Puerto Rico Health Department, had sought candidates to sublease the operation of the Orocovis and Barranquitas CDT emergency rooms. The sublease of the Orocovis CDT emergency room was awarded to Mennonite. (See, docket entries 42-1, 42-3, translated in docket entries 43-1, 43-3.)

## C. Specific Terms of the Professional Services Contract

Language contained in the Professional Services Contract[4] between the Puerto Rico Health Department, as the First Party, and Mennonite General Hospital, Inc., as the Second Party, provides additional information about their relationship and further undermines plaintiffs' contention that the Orocovis CDT emergency room is a part of Mennonite Hospital. Said language reflects that the emergency room is an integral part of the Orocovis CDT, and that Mennonite is not merely leasing empty space in which to operate its own emergency room, as it might in a medical building or in a separate building at a location away from the main hospital campus in Aibonito.

_____

[4]All references to the Professional Services Contract refer to docket entries 42-1 and 42-3, as translated in 43-1 and 43-3, respectively.

CIVIL 10-1434CCC                              9

The final phrase of the first clause, at page 1 of the Professional Services Contract states: "the FIRST PARTY," that is, the Department of Health, "has the responsibility to guarantee the rendering of accessible quality health services to all users of the Puerto Rico Public Health System."  The second clause provides: "**The Emergency Rooms of the Diagnosis and Treatment Centers**[5] **of OROCOVIS AND BARRANQUITAS** are among the health institutions of the People of Puerto Rico **under the administration of the First Party**;"  and that ". . . the DEPARTMENT **requested proposals for the Operation of the Emergency Rooms of the Diagnosis and Treatment Centers of Orocovis and Barranquitas**" (Id., at 3ʳᵈ clause) (our emphasis).  "After being evaluated by the Evaluating Committee, **MENNONITE GENERAL HOSPITAL, INC. was selected for the administration and operation of the aforementioned Emergency Rooms** of the aforementioned Centers owned by Salud Integral de la Montana, Inc., [SIM] **the Emergency Rooms of which have been assigned through a lease to the FIRST PARTY**."  (Id., at 4ᵗʰ clause). "MENNONITE GENERAL HOSPITAL, INC. states that it has the infrastructure and organizational capacity that is necessary to effectively and efficiently operate the emergency rooms of, and provide ambulance, X-ray and laboratory services in the **Diagnosis and Treatment Centers of Orocovis** and Barranquitas."

Further evidence that the Orocovis CDT's emergency room is clearly not an independent facility belonging to Mennonite is found at page 3, paragraph G: "This contract shall be administered by the **Regional Director of the Bayamón Region** and shall be evaluated in order to measure the results obtained according to the need for the service." (Emphasis in the original.)  The eighth paragraph at page four, addressing the provision of paramedic personnel, materials and service refers to the appointment and payment of

---

[5]Emphasis in original omitted, all emphasis is supplied by the Court.

CIVIL 10-1434CCC                              10

personnel and provision of "material or services needed for the operation of the **EMERGENCY ROOMS** of each CDT...."  (Emphasis in the original.)

The tenth clause, at page 5 of the Professional Services Contract reflects that the Puerto Rico Department of Health will pay Mennonite "**the amount of $12,500.00 per month for each Emergency Room up to a maximum of a $25,000.00 per month, upon submission by the SECOND PARTY of an invoice for services rendered and the documents** stipulated in Part B of this clause. **The Regional Director shall verify these invoices and, if correct, shall certify and submit them for payment**."  (Our emphasis.)   The 28th clause, at page 11 provides for Mennonite to facilitate audits that the Puerto Rico Health Department or the Office of the Comptroller of Puerto Rico deem necessary, for which Mennonite should maintain for examination or inspection at all times for the two governmental entities, all records documents, books and data related to the matters which are the subject of the Professional Services Contract.

Page 8, Clause 17 of the Professional Services Contract between the Puerto Rico Department of Health and Mennonite,  addresses the provision and ownership of the emergency room's equipment:

> A. The Second Party states that it has been delivered in good condition, for its use and custody, the area that makes up the Emergency Room of both centers, with its equipment and accessories, as these appear in the equipment inventory of the Hospital and agrees to return them in good condition upon the expiration of this Contract. The Second Party shall not be liable for the tear and wear caused by the passing of time and the prudent, reasonable and concordant use for the services rendered under this contract. In the event of damages to the area or equipment due to a cause attributable to the fault or negligence of the Second Party, or of the physicians who work for the same, the Second Party agrees to repair or substitute said equipment at its own cost.

> B. The Second Party agrees to refrain from making any types of changes in the equipment or structure of the Department without

CIVIL 10-1434CCC                              11

> the written approval of the First Party or its authorized representative.
>
> C. The Second Party agrees to refrain from selling, exchanging or mortgaging the **equipment that has been delivered to it, which is the sole property of the First Party**.(Our emphasis)

## II. FACTUAL FINDINGS

Considering the circumstances outlined above, by which Mennonite came to operate the Orocovis CDT's emergency room, the fact that throughout the Professional Services Contract of Mennonite with the Puerto Rico Department of Health the facilities in which the medical services are provided are identified as the "**Emergency Rooms of Diagnosis and Treatment Centers of Orocovis and Barranquitas**," not as Mennonite's emergency rooms in Orocovis and Barranquitas; the additional fact that the licenses and certificates of need and convenience are issued **jointly** to SIM, the Health Department and Mennonite for the "Integrated Health Center in Orocovis," that Mennonite must submit invoices and documentation to the Puerto Rico Department of Health or to the Office of the Comptroller of Puerto Rico, subject to auditing, in order to be paid by the Puerto Rico Department of Health for the services it provides to the Health Department at the emergency room of the Orocovis CDT; and that the emergency room's equipment at such CDT is wholly owned by the Puerto Rico Department of Health, all lead to one conclusion: that the emergency room is an integral part of the Orocovis CDT, operated in conjunction/connection with a hospital, but is not a part of the Mennonite General Hospital.  That is, the **Orocovis CDT EMERGENCY ROOM is** "operated in connection/conjunction with a hospital," which happens to be Mennonite.

## III. CONCLUSIONS OF LAW

This factual DETERMINATION brings us to the question of law decided in Rodríguez v. American Intern. Ins., Puerto Rico, 402 F.3d 45, 47 (1st Cir. 2005):

CIVIL 10-1434CCC                                12

> . . . whether a CDT, defined by Puerto Rico law as "an
> independent facility [or one operated in conjunction with a
> hospital] which provides community services for the diagnosis
> and treatment of ambulatory patients under the professional
> supervision of persons licensed to practice medicine, surgery or
> dentistry in Puerto Rico," 24 P.R. Laws Ann. §331a(A)(4),
> qualifies as "a hospital that has a hospital emergency
> department" under EMTALA, 42 U.S.C. §1395dd(a). (Footnotes
> omitted.)

The answer to that question is "no." Under EMTALA, the definition of "hospital" is set forth in 42 U.S.C. §1395x(e)(1) and (2), which states, in pertinent part:

> The term "hospital" . . . means an institution which
>
> –
>
> **(1) is primarily engaged in providing**, by or under the supervision of physicians, **to inpatients** (A) diagnostic services and therapeutic services for medical diagnosis, treatment, anc care of injured, disabled, or sick persons, or (B) rehabilitation services for the rehabilitation of injured, disabled, or sick persons;
>
> **(7) [and,] in the case of an institution in any State in which State or applicable local law provides for the licensing of hospitals, (A) is licensed pursuant to such law or (B) is approved, by the agency of such State or locality responsible for licensing hospitals, as meeting the standards for such licensing**.... (Our emphasis.)

Even if the requirement of subsection (e)(1) were met, the other requirements of subsection (e)(7) must be met as well. Puerto Rico law does not license or characterize CDTs as hospitals. Indeed, Puerto Rico law clearly distinguishes between hospitals and diagnostic and treatment centers. Rodríguez, supra, at 49.

The Professional Services Contract between the Puerto Rico Department of Health and Mennonite (docket entries 42-1, 42-3; translated at 43-1 and 43-3) clearly established the conditions under which the latter will provide medical services at the emergency room which is a part of the Orocovis CDT for which the Puerto Rico Department of Health pays Mennonite subject to its submission of invoices. The First Circuit has stated that "CDTs are 'unique' to Puerto Rico and are "limited health facilities that offer only outpatient services..."

CIVIL 10-1434CCC                                   13

Id., at 47-48.  Even if the Orocovis emergency room could meet the requirements of subsection e(1), the licensing requirement of subsection e(7) would not be fulfilled: "**Puerto Rico law does not license or characterize CDTs as hospitals**." Rodríguez, supra, at 49.  Even if a CDT provides emergency service, that does not make it an emergency room of a participating hospital. Id.

        For the above-stated reasons, Mennonite's Motion to Dismiss (**docket entry  7**), as to the federal EMTALA claim, is GRANTED.  The EMTALA claim is DISMISSED, with prejudice.  Declining to adjudicate the claims for medical malpractice under the Civil Code of Puerto Rico, Articles 1802 and 1803, 31 L.P.R.A. §§5141 and 5142, we DISMISS said claims against Mennonite and Dr. Julio Dejardens-Félix, without prejudice.  Judgment to be issued in accordance with this opinion.

        SO ORDERED.

        At San Juan, Puerto Rico, on June 15, 2011.


                                        S/CARMEN CONSUELO CEREZO
                                        United States District Judge